Good morning. May it please the Court, my name is Cindy Walker and I represent the plaintiffs and appellants in this proceeding, Donaldson Bros. Ready Mix, Inc., Charles Donaldson, Katherine Donaldson, and Thomas Simpson. It's our contention that summary judgment was not appropriate in this case because issues of fact concerning the approximate cause of the breaches of fiduciary duties that were found in the Raines case by the District Court preclude summary judgment. In addition, the plaintiffs and appellants claimed for indemnification against Phenneger & Morgan based upon its findings in the Raines case that the plaintiffs and appellants had breached their fiduciary duties when they failed to discover sophisticated business valuation errors that were contained in the appraisal prepared by the concilium group and because they were not independent trustees. Yet, in the same case, the District Court found that the plaintiffs and appellants did not obtain adequate and appropriate advice concerning their duties and obligations as trustees and fiduciaries. Under Montana law, there are two ways under which a claim for indemnification could arise, by contract or where, as here, one party is held responsible for harm committed by another. In this particular action, it's our position that Phenneger & Morgan is the proximate cause of the employee's damages in the Raines case for which the plaintiffs and appellants had breached their fiduciary duties. Now, wait a minute. I want to make sure I understand Montana law. My understanding of Montana law was that if you were actively negligent as part of the tort, I don't know if that means proximate cause. Is that what you're saying? Because if you're actively negligent and the findings from Raines would suggest that was the case with respect to your clients, that you're not entitled to indemnification as a joint tort feature. Actually, Judge, I don't believe there was determination in the Raines case with respect to the degrees or nature of the negligence committed by our clients as compared to the negligence committed by Phenneger & Morgan. Well, I don't think it's comparative, is it? It's the question of what was the conduct that your clients engaged in or omission to act as trustees. You're creating the notion here that I'm not sure I understand from Montana law that only if you have joint tort features, they're jointly liable, but one of them is more active, as you say, or more proximate to the cause. That's correct, Judge, and that was the distinction I was making as opposed to using active versus passive. Well, but I'm okay. I'd rather you couch it in terms that the Montana courts couch it and if you could show me where the proximate cause is. What Montana case is that? Well, actually, Judge, it's been discussed throughout Montana law from approximately 1960 through the present, which in a recent case decided by the Montana Supreme Court, which is State Farm v. Bush Hogg, LLC, which was decided on October 21st of this year and is cited as 2009 MT 349. Did the consultants owe a duty to the members of the ESOP? Not the consultants, Your Honor, and that is why they were not sued in the Rains case. There was no standing because they were not in a contractual relationship with the ESOP participants. Our clients were improperly designated as trustees under that plan based on the ______. Well, they understood that they were trustees, right? They did. They understood. Apparently in the Rains litigation, the judge made a specific finding that they were aware of their fiduciary duties, correct? I believe what the court found, Your Honor, was that the plaintiffs and appellants did not receive adequate or appropriate advice with respect to their duties and obligations as trustees. They understood that they were trustees. There's no doubt about that. No question about that. They understood. And there was ______ they understood that they had a fiduciary duty. They did. They may not have known the scope of that duty. That's correct. But they had a fiduciary duty. Now, in the law, fiduciaries have the highest duty of all. They do. You're correct. And unfortunately in this particular case ______ Did the district court judge found that they breached that duty? They did, and the particular breach that the court found was that they did not discover sophisticated business valuation errors contained within an appraisal and that their designation as trustees ______. Now, in this particular case, the district court found that they did not discover  designation as trustees ______. Does Montana law recognize partial indemnity? No. No, Your Honor. It's all or nothing. I would like to address also the court's ______ Explain that to me. I'm trying to understand. Just to follow up on Justice Breyer's question, if they don't recognize partial indemnity and it's all or nothing, my understanding of Montana law, and you can correct me if it's wrong, is that if your clients have fought, they can't get indemnity. In our position. Even though there might be more fought or additional fought on somebody else's part, you can't get indemnity at all if you are at fault. Actually, I don't believe that's the case, Your Honor. I think ______ So correct me if I'm wrong. Is Montana ______? That's what I thought the district court understood Montana law to be. And if that's wrong, then ______ And I believe that is incorrect, Your Honor. And you cite what for that? Yes. We cite a number of cases in our briefs with respect to that. What's your best case? The best case I would suggest, Judge, would be ______ The Jones v. Arrow Chem Corporation that was decided by the district court of Montana. Case right there. Sorry. So do you understand what best means? Yes. Okay, so why don't you give me your best case? The one that I will read and it will just blow me away and say, boy, was Judge Malloy wrong. I believe that ______ The best case, sorry, Your Honor, would be Crosby v. Billings Deaconess Hospital at 149 Montana 314. Okay, I have it. I have it. And what language in particular? Do you have a spot site or do I need to read the whole case? It's not a very long case. No, it isn't, Judge. That particular case involved a patient who had sued the hospital for burns that he had sustained as a result of a television switch that was placed in a room by another entity. And there was an analysis as to who was the primary responsible party for that injury. And that is our position, Judge, that that analysis continues to today under Montana law and involves issues of fact with respect to who was actively versus passively negligent with respect to the breaches or the alleged negligence that occurred in this case. Well, I see where you're getting approximately from, at least if I'm looking at Fletcher. It says, I mean, there's a lengthy discussion here, but I'm looking at 344 of the reporter and in part it's quoting a variety of sources, CJS on negligence, and it in part says no negligence is insulated as long as it plays a substantial and proximate part in the injury. They do say that. And then they go on to cite the restatement of torts, and then they have a quote or a paraphrase of a district court opinion from Pennsylvania or wherever. In any event, it says, indemnification requires the would-be indemnity to be free from any active negligence contributing to the injury causing accident. And then the holding of the case is in the instant case on the undisputed facts and so on, the city was actively negligent and that active negligence contributed directly and proximately to the accident causing Mary Fletcher's injury. Now, I don't read that as saying they have to be the only, you know, it's primary, secondary. The emphasis is that there was a causal connection. You think the Crosby case makes that clear? I believe a series of the cases that we've cited makes that clear, Judge, precisely what you've just cited, which is the party who was actively negligent ought to be the one held responsible for the harm committed. And in our position, that is Feniger and Morgan, they created an ESOP here that violated ERISA when it only involved the sale of 51 percent of the company's ownership interest as opposed to a supermajority that was required under Montana law, for which plaintiffs and appellants were ultimately held responsible and could not have known that was in error. And, in fact, the ESOP was in existence from 1995 until the Raines case was submitted in 2001 and had no idea that the ESOP that had been created violated ERISA. I see I'm out of time, if I could. You're suing for indemnity, right? Pardon me? I'm sorry. You're suing this for indemnity?  I have no comment on that. Why not for state negligence? I believe at that point, Judge, we were beyond the statute of limitations. Ah. How about breach of contract against the consultant? I think at the point when this case was filed, we were also beyond that statute of limitations also, Judge. Thank you. May it please the Court. Good morning. My name is Bob Phillips. I represent Fennegar and Morgan in this matter. Your Honor, I think this case presents a fairly well-settled group of principles on contribution and indemnity. I don't think that you have to delve too deeply into Montana law in order to dispose of it. I also believe that there aren't very many unique elements of Montana law that have to be dealt with here, with one exception, and that is with regard to Judge Kaczynski's most recent question, why not make a claim for negligence or contribution? Montana law would not allow a claim for contribution to be made against someone who could have been but was not brought into the underlying claim. That's the way our current incarnation of the contribution statute reads in Montana. That's MCA 27-1- Well, I didn't say contribution. I said just state negligence. Yes. You mean they or the judge process breach of contract. I mean, their claim is, look, we hired Fennegar to set up a plan. They did a terrible job. We were damaged. Never mind over here to pay anybody else. We were damaged. Or they breach their contract. Or professional negligence. Or professional negligence. Those claims would lie if brought within the statute. You wouldn't be able to make it a contribution claim, but you could make a they could sue us for professional negligence, I would say. So you agree with opposing counsel this is just simply a time bar, those claims are time barred? Because you were going to give a different answer. Or they have you brought into original action as a third-party defendant or something. But that's not true if you're just suing for straight professional negligence. That's correct. They might have some trouble proving the damages other than what would arise under the contribution claim. But, yes, I think they could have made that claim. I see. And those damages you think would be barred because they're essentially a contribution? Well, I don't know what damages they might allege existed as a result. Let's assume for a second my client gave them bad advice. And that there were damages that they claimed that they sustained that were separate and apart from the damages that they had to pay in Lorraine's case. I don't know what those damages are, but that claim could have been made if brought within the case. Well, let's say they said it is the damages we had to pay in Lorraine's case. Why couldn't they bring that? No, I don't think so. At least I would argue, and we're getting into hypotheticals here, but I would argue in that circumstance that they're trying to make a contribution claim by the back door that they can't do by the front. 27-1703 says you've got to bring us in. That's not just a technical provision of the law either. That has to do with my client's substantive rights to have our fault weighed with the other at-fault party and to have a jury or the judge decide, okay, you owe X and you owe Y. We don't have that opportunity now because they didn't bring us in to that underlying claim, and now they want an all-or-nothing proposition. That's the real injustice. And that's why the rule in Montana is if you are in peri delicto, you may not raise a claim in indemnity. We do allow contribution, but you've got to throw us into the soup at the same time everybody else is there so that we can get our carelessness, if any, weighed at the same time. We're not admitting that we did anything wrong here. We've never had to test that. We've never tried that issue. But if we – even if we did, it doesn't have any impact on the case that we're dealing with here. In an indemnity kind of claim, as you've already noted and counsel has acknowledged, there isn't any comparison of those faults. I would like to talk a little bit about what you get out of the Fletcher, the best case that opposing counsel has offered. Now, Judge Fletcher went through some of those already. I think we simply want to adopt – I don't want to necessarily repeat anything. I just wanted to get your view, your position on Fletcher. In Fletcher, the city of Helena had noticed – I believe it was Helena, yeah – the city of Helena had noticed that there was some problem with the heater. And they were the lessor. They owned the heater and they owned the apartment. And as such, the Montana Supreme Court said because they had noticed and they didn't do anything about it, that they were not entitled to indemnity back against the power company. I think it stands precisely for the proposition that I say is well established in Montana. If a party is in peri-delecto, it may not maintain a claim in indemnity. Now, what do you mean – I notice that's the phrasing of the best case, which is the Crosby case, where the parties are not in peri-delecto and an injury results from the act of one party whose negligence is the primary active and proximate cause and another party who is not negligent or whose negligence is remote, passive, and secondary. So do they not even clear the peri-delecto? The plaintiffs here are in – if you're asking about the appellants here, they are in peri-delecto. Because? For all of the reasons that the district court found that they had breached their fiduciary duty. And I made a list of those things that come out of Judge Malloy's order. First of all, to clear up something, the appraisal has been argued – it's been argued that my client hit the appraiser. In the agreed facts in the pretrial order that they – when they submitted it to the Raines case, they admitted that the appraiser was selected by Donaldson, not Feniger and Morgan. But the important thing is about that – about that appraisal is that Judge Malloy found that the trustees had an obligation to and did not review or analyze or question the methodology of the appraiser. That's at page 476. Mr. Feniger was not hired to do the appraisal. Judge Malloy found that Catherine and Thomas did not understand the fundamental transaction that was going on at page 478. This is a fiduciary that's going to be stepping into the role of a trustee. The trustee, Judge Malloy found, had an obligation to review the appraisal and make sure that the trust interests were being protected. This they failed to do. The court found at page 479 that the appraisal was inherently unreliable, and this was something that the judge found should have been determined by the trustees. What was Feniger's role in all of this then? The appraiser came in and they're getting ready to make the sale and whatnot. Right. Where's Feniger? Where does your client fit in that? Is he standing on the sidelines saying, oh, I don't want to do this? That could well be what he was doing. But what we know he wasn't doing is providing the fundamental information to the appraiser that the appraiser was relying upon in order to come up with the value of the case. One of the things he asked to look at the appraisal report? The appraisal was not delivered to the trustees of the AESOP until the day that the AESOP closed. So I'm sure Mr. Feniger saw the appraisal. I don't know if he had any questions about the methodology. We don't have a record. We haven't tried that issue yet. My client's not been sued for that. That's what would happen if this case were remanded and we had to go try that case. But even assuming that my client didn't look at the appraisal, the Court found that the appellants had that obligation, didn't do it, Your Honors, that is active negligence. Your duty to examine any further stops right there. The Court found that the appraisal found that 51 percent of ownership of the corporation under Montana law was sufficient. He said that was not correct. At page 481, Judge Malloy in the court below found that the defendants were aware of their fiduciary duties. So all of the talk you've heard about the lack of sophistication or the fact that they're high school graduates and trustees is irrelevant in view of that factual finding, which is collateral estoppel applicable to this case. He also found a conflict on the part of Donaldson, Charles Donaldson. The most significant issue, I think, in that regard was the fact that there was a piece of property that was included within the appraisal, included within the value that belonged to Charles Donaldson, and he was quiet when that appraisal went forward and was approved by the trustees. That lack of raising notice is active causal negligence giving rise to the damages in this case, and it is fatal to the claim for indemnity here against my client. For all the trustees or only for him? It's for all the trustees. I mean, the other trustees didn't question him either. They didn't review the appraisal when they had a duty, an affirmative duty, so to do. So we think it's fatal, and that's why the district court should be affirmed. Thank you, Your Honors. Roberts. I don't know if we have any time. Would you like to take a minute for rebuttal? I know I'm out of time. I appreciate the opportunity to provide some rebuttal. As counsel offered in response, Feniger testified that the trustees relied heavily upon him and his advice and recommendations in the formation, creation, and implementation of this ESOP. They couldn't have done otherwise. They lacked the experience, the knowledge to do anything otherwise. They had no idea that duties were being imposed upon them that required them to ensure the accuracy of the appraisal report. And as counsel ---- Well, what did they think their role was if they got copies of the appraisal, didn't they? I'm not certain what they thought their role was, Judge. Well, I mean, just ---- I mean, appraising the property and the value of it, you don't think that they would either know they had to review it or if they didn't understand it, ask questions. I believe they felt they had that opportunity, yes. And the district court, in Lorraine's findings, agreed with that concept and found that they knew it and should have done it. Well, I believe what he found was that they were aware of their fiduciary duties concerning the participant vote with respect to the employees and their participation and not with respect to any of the duties prior to the closing of the ESOP, which required them to ensure the accuracy of sophisticated legal taxation and valuation issues that were addressed in that appraisal. All right. Thank you. Okay. Thank you. The case is highly substantive.
judges: Kozinski, Fisher, Paez